UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROGER A. WESCHER,

           Plaintiff,

    v.                                          Case No. 13-CV-229

CHEM-TECH INTERNATIONAL, INC.,

           Defendant.

# DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.    Facts and Procedural History

Chem-Tech International, Inc. ("Chem-Tech"), a small company that provides water treatment for commercial heating and cooling towers, began to grow frustrated with the frequent absences of one of its field representatives, Roger A. Wescher ("Wescher"), and therefore contacted a human resources consultant for advice as to whether it could fire him, (Docket No. 52-4 at 1). The consultant urged Chem-Tech to proceed cautiously. Wescher was not an employee who was frequently absent from work because he was shirking his responsibilities but rather was forced to miss work because of his obligations with the Air Force Reserves. (Docket No. 54, ¶¶ 16-19.) Mari Ann Larsen, a vice-president of Chem-Tech, who manages the office and along with her husband, Chem-Tech owner Robert E. Larsen, makes most decisions on hiring and firing, contacted the human resources consultant, (Docket No. 52, ¶ 3), in June of 2010, during a narrow period between Wescher's return from one period of military service and

his scheduled departure for another period of military service, (Docket No. 54, ¶ 20; 52-4 at 1). After expressing deep frustration with Wescher's past and impending military obligations, she closed her email, "Where can we draw the line and say NO MORE TIME OFF OR YOU ARE FIRED!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!" (Docket No. 52-4 at 1 (emphasis in original).) Wescher alleges that two days later Mari Ann Larsen called him and asked him to resign his full-time position with Chem-Tech and go back to working part-time given the amount of time he needed to take off because of his military obligations. (Docket No. 61, ¶ 13.)

When Wescher was called up to active duty for the first six months of 2011, Wescher alleges that Mari Ann Larsen again asked Wescher to resign his position with Chem-Tech. (Docket No. 61, ¶ 16.) Wescher suggested that Chem-Tech instead hire another employee who could cover for Wescher, which Chem-Tech purportedly did. (Docket Nos. 54, ¶ 22; 61, ¶ 16.) However, for reasons that are unclear, this employee apparently failed to service Wescher's customers during Wescher's absence. On March 31, 2011, roughly halfway into Wescher's active duty term and 10 months after inquiring whether it could fire Wescher because of his absences for military duty, a Chem-Tech employee acting on behalf of Wescher's immediate supervisor contacted Wescher's Air Force commanding officer to inquire whether Wescher could return early on the grounds that his absence was creating a "hardship on small business." (Docket No. 52-6 at 2.) The email goes on at length, describing Wescher as an "excellent employee" but stating that when he is gone there is no one to cover his territory and service his customers and Chem-Tech cannot hire another employee to fill-in for Wescher. (Docket No. 52-6 at 2.) It notes that "since rogers [sic] departure we have lost several customers due to a laps [sic] of coverage." (Docket No. 52-6 at 2.) It closes with the statement, "we need to do something." (Docket No. 52-6 at 2.)

Six months later, just three months after Wescher returned from active military duty, on September 30, 2011,Chem-Tech fired Wescher. Roughly a month after Wescher returned to work, Chem-Tech began to review the data from a GPS unit it previously surreptitiously installed on Wescher's vehicle and other company vehicles. The company learned that Wescher would repeatedly exceed the speed limit and use the company vehicle to take his children to school, in contravention of Chem-Tech's policies. (Docket No. 54, ¶¶ 25, 26, 27, 28.) On August 24, 2011, Robert Larsen met with Wescher and another field representative identified through GPS data as driving at excessive speeds, and discussed the need to obey speed limits, never drive faster than 70 miles per hour, how to improve gas mileage, and risks associated with injuring themselves or someone else. (Docket Nos. 54, ¶ 30; 55-5.) The other field representative "showed driving improvement" but Wescher did not. (Docket No. 54, ¶ 31.) Wescher appeared to continue to use his company vehicle for personal use. (Docket No. 54, ¶ 31.) On September 7, 2011, Robert Larsen sent an email to all field representatives noting that the wife of a "vendor very close to us had a car accident just a few weeks ago and a passenger in the car was killed." (Docket Nos. 54, ¶ 32; 55-6.) He closed, "Again please drive carefully." (Docket No. 55-6.)

Robert Larsen again met with Wescher about his use regarding a company vehicle, cautioned him to drive safely and in a letter summarizing that meeting stated, "You must understand that it is Company policy not to use Company vehicles for any other use than to carry out your daily duties as a Chern-Tech Representative. This includes transporting family members and friends and doing any personal business such as personal errands, etc." (Docket No. 55-11 at 1.) Wescher signed this letter on September 23, 2011. (Docket No. 55-11 at 2.)

When the GPS data indicated that Wescher continued using his company vehicle for personal use after being warned by the company, Chem-Tech hired a private investigator to tail Wescher. (Docket No. 54, ¶ 36.) The investigator confirmed that Wescher used the company vehicle to drop his children off at school. (Docket No. 54, ¶ 37.) Chem-Tech also learned that Wescher would routinely remain at home until 9:00 AM despite Chem-Tech's expectation that its field reps begin their work day by 7:00 AM. (Docket No. 54, ¶¶ 7, 35, 37.) In total, over the roughly 2 years that Wescher worked for Chem-Tech, his military obligations required him to miss work for four distinct periods: one week in January 2010; two weeks in May 2010; two to three weeks in June 2010; and six months from late-December 2010 through June 2011. (Docket No. 54, ¶¶ 17-18.)

Wescher, proceeding pro se, filed the present action on March 1, 2013 alleging that he was terminated in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 et seq. ("USERRA"). (Docket No. 1.) All parties subsequently consented to the full jurisdiction of a magistrate judge. (Docket Nos. 3, 9, 14.) On April 30, 2014, the defendant moved for summary judgment. (Docket No. 49.) The plaintiff responded, (Docket No. 58), and the defendant replied, (Docket No. 65). The pleadings on the motion for summary judgment are closed, and the matter is ready for resolution.

## II.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A material fact is one that might affect the outcome of the case, and a nonmoving party's dispute is "genuine" only if a reasonable finder of fact could find

in the nonmoving party's favor at trial. Anderson, 477 U.S. at 248-49. The court views the facts in the light most favorable to the non-moving party, and likewise it draws all inferences in the non-movant's favor. Ault v. Speicher, 634 F.3d 942, 945 (7th Cir. 2011). The court may not weigh the evidence or make credibility determinations. Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). Thus, the nonmoving party will defeat a motion for summary judgment if it is able to produce admissible evidence that, when viewed in the most favorable light, would be sufficient to enable the finder of fact to return a verdict in its favor. Fleishman v. Cont'l Cas. Co., 698 F.3d 598, 603 (7th Cir. 2012).

### III. Analysis

The Uniformed Services Employment and Reemployment Rights Act prohibits employers from firing or denying any benefit of employment to an employee based upon the employee's membership in the armed services. 38 U.S.C. § 4311(a). An employer violates this prohibition if the employee's membership is a motivating factor for the employer's action "unless the employer can prove that the action would have been taken in the absence of such membership." 38 U.S.C. § 4311(c). Additionally, 38 U.S.C. § 4316(c) bars an employer generally from terminating an a person who is reemployed following a period of military service except for cause within one year of the employee's return. The employer bears the burden of showing "that it is reasonable to discharge the employee for the conduct in question, and that he or she had notice, which was express or could be fairly implied, that the conduct would constitute cause for discharge." 20 C.F.R. § 1002.248(a). Wescher alleges that Chem-Tech violated both of these provisions of the Act. (Docket No. 1, ¶ 26.)

5

Case 2:13-cv-00229-PP   Filed 08/19/14   Page 5 of 10   Document 72

Based upon the facts set forth above, the court finds that a reasonable finder of fact could conclude that Wescher's membership in the Air Force Reserves and the resulting absences from work were a motivating factor in Chem-Tech's decision to terminate Wescher.

Mari Ann Larsen's email to the human resources consultant reveals immense frustration with Wescher's military obligations and their impact upon Chem-Tech. (Docket No. 52-4 at 1.) Such comments are highly relevant in assessing whether an employee's military service was a motivating factor in the decision to terminate the employee. Maher v. City of Chicago, 406 F. Supp. 2d 1006, 1024 (N.D. Ill. 2006) (citing Diaz-Gandia v. Dapena-Thompson, 90 F.3d 609, 615-16 (1st Cir. 1996); Harris v. City of Montgomery, 322 F.Supp.2d 1319, 1325 (M.D. Ala. 2004); Mills v. Earthgrains Baking Co., 2004 WL 1749500 at 4 (E.D. Tenn.2004); Smith v. School Board of Polk County, Fla., 205 F.Supp.2d 1308 (M.D. Fla. 2002); Gillie–Harp v. Cardinal Health, Inc., 249 F.Supp.2d 1113 (W.D. Wis. 2003); Leisek v. Brightwood Corp., 278 F.3d 895, 900 (9th Cir. 2002); see also Johnson v. Vill. of Rockton, 04 C 50223, 2007 WL 5720626 (N.D. Ill. Nov. 1, 2007). In an affidavit submitted to this court, Mari Ann Larsen avers, "As far as I was concerned, once I was advised of the law by [the consultant], the matter was behind us and Chem-Tech would comply fully with what we felt the law required." (Docket No. 52, ¶ 14.) Assessing the veracity of Mari Ann Larsen's statement requires a determination of credibility that is not appropriate on summary judgment.

The fact that Chem-Tech was plainly advised of what the law requires does not create the presumption that it complied with the law. To the contrary, a reasonable finder of fact could conclude that being provided with information on the law simply moved Chem-Tech to provide better cover for its true motivations. In fact, the human resources consultant's response could be seen as a roadmap outlining how Chem-Tech could best hide its true motivations if it wanted to

6

fire Wescher because of his military service. The tips are straightforward: do not fire him right after he returns from military duty and thoroughly document any other performance issues that might be able to be utilized as a pretext for termination. (Docket No. 52-4 at 2.)

Significantly, being informed of what the law required did not end the matter for Chem-Tech. On March 31, 2011, during a period that Wescher was deployed, a Chem-Tech employee acting on behalf of Wescher's supervisor asking if Wescher could return because his absence was a creating a "hardship on small business." (Docket No. 52-6 at 2.) The email stated that Chem-Tech was not "looking to interfere with Rogers [sic] desire and need to serve but, we need to do something." (Docket No. 52-6 at 2.)

Chem-Tech's statement that it "need[s] to do something" could be understood by a reasonable finder of fact as indicating that after it was not able to obtain the "hardship on small business" exception it sought, it would be willing to resort to searching out reasons to terminate Wescher that could serve as cover for its actual motivation—terminating Wescher because of how his military obligations were impacting Chem-Tech—and take its chances it might be sued.

The suggestion that Chem-Tech was actively seeking out grounds that could serve as a basis to terminate Wescher is bolstered by the fact that shortly after Wescher's return from a six-month deployment it started monitoring employee vehicles via GPS. This was not something it had done in the past. (Docket No. 55, ¶ 13.) The only instance the defendant identifies where it ever even looked at the GPS data was an instance in 2010 where Robert Larsen had reason to believe that one of Chem-Tech's field representatives had misrepresented to him that the representative was at a customer's business. (Docket No. 55, ¶ 13.) Although Chem-Tech proffers a general explanation as to why it chose to begin monitoring Wescher's movements,

(Docket No. 55, ¶ 15), it shall be up to the finder of fact to determine whether this explanation is credible.

Having concluded that a reasonable finder of fact could find that Wescher's military service was a motivating factor in Chem-Tech's decision to terminate him, the court turns to the question of whether Chem-Tech has demonstrated that it would have discharged Wescher anyway. Obviously, military service does not immunize an employee from having to comply with an employer's rules and expectations; notwithstanding the USERRA, an employer can lawfully terminate an employee who is or was a member of the military.

Here, it is undisputed that Wescher sped and used his company vehicle to drive his children to school. Wescher acknowledges speeding and taking his children to school in the company vehicle but disputes whether he was "specifically warned" about using the vehicle to take his children to school. (Docket No. 60, ¶¶ 34, 36-38.) It was his understanding that the letter he signed on September 23, 2011, (Docket No. 55-11), addressed only speeding, (Docket No. 60, ¶ 34). Regardless of whether Chem-Tech's policy regarding employee's personal use of company vehicles was explicitly addressed on September 23, 2011, the evidence is undisputed that Chem-Tech's motor vehicle policy prohibits such conduct and Wescher signed this policy on October 23, 2009, acknowledging his understanding and agreement to abide by it. (Docket No. 52-1.) Thus, the court finds that Chem-Tech had cause to terminate Wescher, and therefore Wescher cannot prevail on his claim under 38 U.S.C. § 4316(c). See Ferguson v. Walker, 397 F. Supp. 2d 964, 972 (C.D. Ill. 2005) (citing Keserich v. Carnegie--Illinois Steel Corp., 163 F.2d 889, 890 (7th Cir. 1947); Foor v. Torrington Co., 170 F.2d 487 (7th Cir. 1948)).

However, the existence of cause does not preclude Wescher from prevailing on his claim that he was terminated because of his membership in the Air Force Reserve. An employer will

often have cause to terminate an employee but not act upon it. For example, Wescher states that he previously was cited for speeding in a Chem-Tech vehicle. (Docket No. 61, ¶¶ 5-6.) Rather than being terminated or even disciplined for this offense, Chem-Tech, according to Wescher, paid the citation for Wescher. (Docket No. 61, ¶ 6.) Notably, this citation was issued and paid for before Wescher ever requested time off due to his military obligations.

If membership in the armed services is the additional factor an employer relied upon to conclude that an ordinary infraction is actually a terminable offense, the employer violates 38 U.S.C. § 4311(a). When the employer has the burden of showing that it would have fired an employee notwithstanding that employee's protected status, ordinarily that will be a question that can be resolved only by the finder of fact. Gillie-Harp v. Cardinal Health, Inc., 249 F. Supp. 2d 1113, 1123 (W.D. Wis. 2003) (quoting Venters v. City of Delphi, 123 F.3d 956, 973 (7th Cir. 1997)). Only if "the court can say without reservation that a reasonable finder of fact would be compelled to credit the employer's case on this point" may the court grant summary judgment in favor of the employer. Id. (quoting Venters, 123 F.3d at 973). The court cannot so find here. Therefore, the court must deny the defendant's motion for summary judgment with respect to the plaintiff's claim that the defendant violated 38 U.S.C. § 4311(a).

## IV. Appointment of Counsel

Finally, the court notes that the plaintiff has repeatedly requested that counsel be appointed to represent him in this matter. (Docket No. 23, 47.) In denying without prejudice the plaintiff's last motion, the court noted that it would reconsider the appointment of counsel if the court's resolution of any dispositive motions did not fully resolve the matter. The court having concluded that the defendant's motion for summary judgment must be largely denied, the next step in this matter is trial. Therefore, the court concludes that, in accordance with 28 U.S.C.

9

§ 1915(e)(1) and Pruitt v. Mote, 503 F.3d 647, 649 (7th Cir. 2007), it is appropriate to now attempt to recruit a lawyer to represent the plaintiff in this matter. If the plaintiff no longer seeks to have counsel appointed to represent him, the plaintiff shall immediately contact the court so it may forego its efforts to recruit counsel. Barring such an indication from the plaintiff, the court shall soon issue an order indicating whether it has succeeded in recruiting an attorney and, if it is successful, providing the plaintiff with additional information. The court shall address further scheduling at that time.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment is granted with respect to the plaintiff's claim that the defendant violated 38 U.S.C. § 4316(c) by terminating the plaintiff without cause and denied as to all other grounds.

Dated at Milwaukee, Wisconsin this 19th day of August, 2014.

AARON E. GOODSTEIN
U.S. Magistrate Judge