UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROGER A. WESCHER,

        Plaintiff,

v.

CHEM-TECH INTERNATIONAL,

        Defendant.

Case No. 13-CV-229-PP

---

**ORDER DENYING IN PART AND GRANTING IN PART
PLAINTIFF'S MOTION FOR EQUITABLE RELIEF (DKT. NO. 126)**

---

I.     BACKGROUND

Plaintiff Roger Wescher has filed a motion seeking post-trial equitable relief. Dkt. No. 126. The plaintiff has traveled a long route to get to this point. Judge Goodstein memorialized most of the journey in his summary judgment order; the court will not repeat that history. See Dkt. No. 72. After a three-day trial, the jury found (1) that the plaintiff's service in the Air Force Reserves was a motivating factor in defendant Chem-Tech's decision to terminate him, in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §4323, and (2) that Chem-Tech did not show, under a preponderance standard, that it would have terminated the plaintiff otherwise. Dkt. Nos. 121, 122, 123, 124. As compensation, the jury awarded the plaintiff $90,000 in back pay. Dkt. No. 121.

After the verdict, the plaintiff filed this motion for equitable relief. Dkt. No. 126. The court held a hearing on the motion. Dkt. No. 144. After reviewing

1

the pleadings and the arguments at the hearing, the court finds that the plaintiff is entitled to front pay, pre-judgment interest, and a tax offset.

## II. DISCUSSION

"USERRA encourages military service by granting service members rights with respect to civilian employment that are not available to similarly situated, nonmilitary employees." Crews v. City of Mt. Vernon, 567 F.3d 860, 867 (7th Cir. 2009). The court "shall use, in any case in which the court determines it is appropriate, its full equity powers . . . to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. §4323(e). In other words, if an employer violates USERRA, the court may use the necessary equitable remedies to make the plaintiff whole. The plaintiff asks the court to award the following relief: reinstatement, front pay, pre-judgment interest and a tax offset. Dkt. No. 126 at 1.

### A. Reinstatement Is Not the Appropriate Remedy for Chem-Tech's USERRA Violation.

Pretrial, the parties entered into a stipulation that "if [the plaintiff] prevails, the Court could require that Chem-Tech reinstate him and in that event they agree that instead the Court should exercise its equitable powers and decide whether and how much to award as front pay." Dkt. No. 107 at 5. Despite this agreement, the plaintiff now asks the court for the equitable remedy of reinstatement. Dkt. No. 126 at 3. Chem-Tech "vehemently opposes reinstatement." Dkt. No. 132 at 1.

Reinstatement generally is favored over front pay. Hance v. Norfolk S. Ry. Co., 2007 WL 7044986, * 5 (E.D. Tenn. March 23, 2007); see also Hutchison v.

2

Amateur Elec. Supply, Inc., 42 F.3d 1037, 1045 (7th Cir. 1994). "The decision is consigned to the sound discretion of the district court, *id.* at 1369, which should not grant reinstatement 'where the result would be undue friction and controversy.'" Hutchison, 42 F.3d at 1045–46 (quoting McKnight v. General Motors Corp., 908 F.2d 104, 115 (7th Cir.1990)). Reinstatement is less appropriate than front pay where "the plaintiff has found other work; where reinstatement would require displacement of a nonculpable employee; where the hostility between the parties precludes the possibility of a satisfactory employment relationship; or where an employer is genuinely dissatisfied with an employee's job performance." Hance, 2007 WL 7044986 at *5 (citing Hudson v. Reno, 130 F.3d 1193, 1202 (6th Cir. 1997)).[1]

The plaintiff "now believes that the parties can work together despite the adverse positions that they took in the case." Dkt. No. 126 at 3. He argues that evidence presented at trial demonstrated that his "overall work performance was at least satisfactory, with no evidence of customer complaints or prior discipline." Id. at 5. He has not been able to gain similar employment since Chem-Tech terminated him, and Chem-Tech did not require him to work the hours required by other jobs. Id. He says that "whatever hostility may exist on the part of Chem-Tech owners Mr. and Mrs. Larsen is insufficient to render reinstatement infeasible." Id. While he concedes that "some awkwardness at the beginning may be unavoidable," his sales representative position wouldn't require him to interact with the Larsens daily. Id. at 6. He wants the court to

---

[1] Abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843 (2001).

3

reinstate him in the same territory he'd been covering when he was terminated in 2011, at the same rate of pay that Matt Blodgett—who worked the territory afterward—was receiving. He also wants full benefits dating back to when he started. Id.at 4.

The court disagrees with the plaintiff that reinstatement is appropriate. Chem-Tech has asserted that it "believes that its relationship with the plaintiff is irreparable" and that the plaintiff's work performance was genuinely unsatisfactory. Dkt. No. 132 at 2. Chem-Tech is a small company, with a full staff of service representatives. Id. at 3. While the plaintiff questioned this prior to the hearing on the motion, it appears clear that if Chem-Tech were to reinstate the plaintiff, it would have to terminate another non-culpable service representative. Id. at 3. The evidence at trial indicated that there were multiple issues between the parties. While the jury found that Chem-Tech terminated the plaintiff because of his military leave, the Larsens testified that the plaintiff also used the company car for personal reasons and missed work for reasons other than his military service. The litigation has dragged on since March of 2013; it began when the plaintiff filed his complaint *pro se*, and the court ended up reopening discovery (further delaying proceedings) after he obtained counsel. These kinds of circumstances would create a working environment pervaded with hostility.

Although the court understands that reinstatement is generally favored over front pay, in this small company with the level of hostility displayed at

4

Case 2:13-cv-00229-PP   Filed 12/27/16   Page 4 of 14   Document 152

trial and in the pleadings, equity weighs against reinstatement, and the court will not order the defendant to reinstate the plaintiff.

**B.    Front Pay Is the Appropriate Remedy for Chem-Tech's Unlawful Termination.**

Alternatively, the plaintiff asks for five years of front pay. Dkt. No. 126 at 9. Chem-Tech responds that the court should not award front pay, because the plaintiff did not mitigate his damages and find comparable employment. Dkt. No. 132 at 6. In the event that the court does award front pay, Chem-Tech argues that it should award only one year's worth. Id. at 8.

Courts award front pay as a tool to compensate plaintiffs for the "post judgment effects of past discrimination." Shore v. Federal Express Corp., 777 F.2d 1155, 1158 (6th Cir.1985). "Front pay is intended to be a temporary award." Montoya v. Orange Cnty. Sheriff's Dept., 2014 WL 6389433, *7 (C.D. Cal. Nov. 13, 2014) (Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1347 (9th Cir. 1987)). Plaintiffs usually request their former salary for a certain number of years. The court's key inquiry then becomes whether the employee was likely to have remained employed for that amount of time. U.S. E.E.O.C. v. Century Broad. Corp., 957 F.2d 1446, 1464 (7th Cir. 1992) holding modified by Price v. Marshall Erdman & Assoc., Inc., 966 F.2d 320 (7th Cir. 1992).

In this case, the jury already has found that the plaintiff would have remained employed at Chem-Tech had the company not fired him to avoid complying with his military service obligations. Dkt. No. 121. The plaintiff worked at Chem-Tech for thirteen years, in various capacities, and evidence at trial showed that he was "highly valued" before his military service became an

5

issue. Dkt. No. 126 at 5, 8-9; Dkt. No. 133 at 4. Absent his military obligations, the court finds it likely that the plaintiff probably would have remained employed at Chem-Tech for an additional five years.

Chem-Tech argues that the court should decline to award front pay because the plaintiff failed to mitigate his damages. Dkt. No. 132 at 6-7. "To establish the affirmative defense of a plaintiff's failure to mitigate damages, the defendants must show that: (1) the plaintiff failed to exercise reasonable diligence to mitigate [his] damages, and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence." Hutchison, 42 F.3d at 1044 (citation omitted).

In support of its argument, Chem-Tech cites Hutchison v. Amateur Elec. Supply, Inc. 42 F.3d at 1037; Dkt. No. 132 at 6-7. The plaintiff in Hutchison received a back pay award after the jury found that she experienced sexual harassment and retaliatory termination in violation of Title VII. Id. at 1041. Although the jury awarded the plaintiff $80,000 in back pay, the plaintiff asserted that the evidence demonstrated that she should have been awarded $120,000 in back pay. Id. at 1043. As a result, she filed a motion for a new trial on damages. Id. at 1043. She argued that "the only way the jury could have arrived at the $80,000 figure was by finding that she failed to mitigate her damages, and that the evidence does not support such a failure." Id. at 1043-44.

The district court concluded that a reasonable jury could have accepted the testimony asserting that the plaintiff did not take advantage of temporary

or full-time employment services specializing in placing persons with her specific skills. Id. at 1044. The plaintiff pushed back, arguing that even if the defendants had met their burden by showing a lack of reasonable diligence, they did not establish that comparable employment existed. Id. at 1044.

The district court denied the motion, finding that because the plaintiff's supervisor had paid her at above market rate, a reasonable jury could have concluded that, "as it became clear to her that, given her skill level and training, she could not demand an identical salary for the same position in the market, she failed [her duty] to adjust her employment expectations accordingly." Id. at 1045. The Seventh Circuit found that the district court had not abused its discretion, because:

> [a] reasonable jury could have concluded from the evidence that absent [her supervisor's] unlawful discrimination, plaintiff would have been 'in the market' because the premium wages she received at [her job] were tied to her continued toleration of [her supervisor's] abuse. Comparable nonabusive employment would then be compensated at the market rate, and plaintiff had a duty to seek and accept it.

Id. at 1044-45.

The evidence in Hutchison supported the possible conclusion that the plaintiff had failed to mitigate her damages because (1) the plaintiff failed to exercise reasonable diligence by not taking advantage of employment services, and (2) had she exercised reasonable diligence, it was likely that the plaintiff would have found employment compensable at the rate of her previous employment minus the premium she received in connection with the abusive environment. These facts don't exist in this case.

7

The facts here are distinguishable from those in Hutchison. First, the court finds that the plaintiff diligently searched for employment. At the hearing on this motion, the plaintiff's attorney reiterated for the court all of the ways the plaintiff had searched for work. He worked extensively with a job center for veterans and a state job center. He had several interviews, and at one point, obtained a job with Titan Spine through a temporary agency. Due to what the plaintiff characterized as a miscommunication over scheduling, Titan Spine let him go, and he received unemployment. And the plaintiff did get some jobs—currently, he works some hours at Menard's.

The plaintiff also argued that he might have found work of the kind he performed at Chem-Tech if Chem-Tech had not made "oral or written disparaging statements concerning him directly and indirectly to potential future employers." Dkt. No. 12 at 11. The court does not know whether Chem-Tech made such statements or not, but if it did, that supports the plaintiff's argument that his failure to obtain comparable employment was influenced by factors outside of his control.[2]

Second, the plaintiff in Hutchison refused to accept that her qualifications could not command a similar salary, and failed to adjust her job search accordingly. Hutchinson, 42 F.3d at 1045. Here, the plaintiff adjusted his search to the realities of the job market. The plaintiff is a forty-nine year old

---

[2] The motion for equitable relief asks the court to issue an order prohibiting Chem-Tech from making such disparaging statements to future employers. Dkt. No. 126 at 11. The court declines this request. The people who work at Chem-Tech have the same First Amendment rights as anyone else; the plaintiff has state-law remedies for libel, defamation and slander if he is able to obtain proof that Chem-Tech is doing any of those things.

man with an associate's degree. Dkt. No. 133 at 5. He spent most of his work history in a specific industry. He has trouble reading and processing information. Id. at 5. After five years of searching for comparable work, the plaintiff has accepted that "the type of work that he had experience with before joining Chem-Tech, is not marketable in today's economy." Dkt. No. 126 at 9. This recognition led him to obtain part-time work at Menards prior to the trial, and recently he started temporary employment with Axelon, maintaining his job with Menards on the weekends. Dkt. No. 133 at 5. Both jobs pay substantially less than the plaintiff's Chem-Tech salary. Dkt. No. 126 at 9. Unlike the plaintiff in Hutchinson, the plaintiff here appropriately adjusted his job search.

Finally, Chem-Tech argues that the jury must have concluded that the plaintiff failed to mitigate his damages because the back-pay award was less than the amount the plaintiff had requested. Dkt. No. 132 at 6. The court declines to conclude that an award of $90,000 instead of the requested $112,786.05 demonstrates the jury's intent to make a finding that the plaintiff failed to mitigate his damages. See Pl. Ex. 39B. In the space following the question of lost wages and benefits, the jurors wrote "$90,000.00" without any explanation. Dkt. No. 121. The jury may have reduced the overall amount for a variety of reasons; it may have meant to challenge the accuracy of the plaintiff's calculations, or may have reduced the award to compensate for benefits it believed the plaintiff might be receiving at Menards. The jury did not explain why it chose the $90,000.00 back-pay award, but even if Chem-Tech's

9

(unsupported) assumption is correct, "[a] jury's award for the pre-judgment effects of past discrimination is irrelevant to determining the propriety of awarding front pay." See Century Broad. Corp., 957 F.2d at 1464, holding modified by Price, 966 F.2d at 320. The court finds that the plaintiff did mitigate his damages.

The plaintiff's 2011 salary from Chem-Tech was $33,653.75. Dkt. No. 126 at 10.[3] Applying the plaintiff's discount rate of .54% (totaling $33,472.99) and subtracting the amount of money the plaintiff expects to make this year ($20,000, id. at 10), the court will award the plaintiff $13,473.00 (rounding up to the nearest dollar) per year of front pay for the five-year period. The total of $13,473 per year for five years is $67,365.00.

### C. The Plaintiff Is Entitled to Pre-judgment Interest.

The plaintiff asks the court to award pre-judgment interest at an average rate of 3.28%, starting from the date of termination. Dkt. No. 126 at 12. The defendant does not appear to object to the award of pre-judgment interest, but argues that the court should use 3.25% as the interest rate and calculate the award from the date that the plaintiff filed his petition. Dkt. No. 132 at 9-10.

Pre-judgment interest aims to make the plaintiff whole by compensating for the loss of the time value of money. E.E.O.C. v. O'Grady, 857 F.2d 383, 392 (7th Cir. 1988)(citations omitted). "Prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive

---

[3] The court agrees with Chem-Tech that there is no basis for using the salaries paid to other Chem-Tech employees. See Dkt. No. 132 at 7.

10

to delay." Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 820 (7th Cir. 2002) (quoting Gorenstein Enters., Inc. v. Quality Care–USA, Inc., 874 F.2d 431, 436 (7th Cir.1989)). USERRA authorizes awards of prejudgment interest, but does not prescribe a particular rate. See 38 U.S.C. §4323(d)(3). Generally, "[t]he adjusted prime rate is a reasonable indicator of the value of the use of money." O'Grady, 857 F.2d at 392 (citing E.E.OC. v. County of Erie, 751 F.2d 79, 82 (2d Cir. 1984)).

The defendant argues that the court should calculate interest from the date that the case was filed. Dkt. No. 132 at 10. The court recognizes that there were delays along the plaintiff's journey to the jury verdict. Chem-Tech terminated the plaintiff on September 30, 2011. Dkt. No. 126 at 12. On July 12, 2012, the plaintiff filed a complaint with the Department of Labor ("DOL") seeking assistance with his USERRA claim. Dkt. No. 133 at 7. DOL's investigation continued through the end of 2012. Id. at 7. The plaintiff filed this complaint on March 1, 2013. Dkt. No. 1. Nevertheless, the plaintiff was representing himself when he filed both the DOL complaint and this complaint, and the court finds that the delays are not so egregious as to preclude the plaintiff from receiving pre-judgment interest for the entire period from the date of termination.

At the hearing on the motion and through post-hearing filings, the plaintiff argued that the court should compound the interest monthly, while the defendants argued that it should compound the interest annually. Dkt. Nos. 150, 151. After considering the arguments, the court finds that

11

compounding the interest monthly is appropriate, because it is more likely to make the plaintiff whole. See Cabernoch v. Union Labor Life Ins. Co., 2009 WL 2497669, *4 (N.D. Ill. Aug. 14, 2009) ("Because monthly compounding of interest is standard on everything from mortgages to credit cards to car loans, such compounding is appropriate here. By compounding the interest at a lesser frequency, Defendants would be profiting from their wrong and Plaintiff would not be compensated fully for the lost value of her money in the marketplace."). Accordingly, the court will award $9,143.57 of prejudgment interest, as calculated in dkt. no. 143-1.

### D. The Court Will Award the Plaintiff Additional Funds to Offset His Tax Liability from the Back-Pay Award.

The plaintiff also asks the court to compensate him for the additional tax liability he will face as a result of the back-pay award. Dkt. No. 126 at 14. The defendant argues that courts should reserve the remedy of tax offsets for extreme circumstances, and that the plaintiff's circumstance is not so extreme. Dkt. No. 132 at 11.

In E.E.O.C. v. Northern Star Hospitality, Inc., 777 F.3d 898, 904 (7th Cir. 2015), the Seventh Circuit joined "the Third and Tenth Circuits in affirming a tax-component award in the Title VII context." Specifically, the Seventh Circuit affirmed the district court's award of $6,495.00 to offset the plaintiff's tax liability on a $43,300.50 back-pay award for a Title VII retaliation claim. Northern Star Hospitality, 777 F.3d at 901. The back-pay award placed the plaintiff in a higher tax bracket than if he had received the pay on a regular, scheduled basis. Id. at 903-04. Without the tax offset, the plaintiff

12

would not have been made whole, and the court found that that result "offends Title VII's remedial scheme." Id. Although Northern Star was a Title VII case, USERRA's remedial scheme also aims to make the plaintiff whole. See 38 U.S.C. §4323(d)(1)(B) ("The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.").

The back-pay award here will push the plaintiff's tax bracket from 15% to 28%. Dkt. No. 126 at 14. He calculates that this bump will result in an additional $5,440.76 tax liability. Id. at 15. The court does not agree that a plaintiff should receive a tax offset only in extreme circumstances. Northern Star set a clear standard. Northern Star Hospitality, 777 F.3d at 903-04. A tax offset is necessary to make the plaintiff whole. Id. The court will add $5,440.76 to the plaintiff's award to accomplish that goal.

### III. CONCLUSION

The court **DENIES** that portion of the plaintiff's motion for equitable relief which seeks reinstatement. Dkt. No. 126.

The court **GRANTS** that portion of the motion for equitable relief that requests the equitable remedies of front pay, prejudgment interest and a tax offset.

The court **DIRECTS** the clerk to enter judgment (1) awarding the jury verdict in the amount of **$90,000.00**; (2) awarding front pay in the amount of

13

**$67,365.00**; (3) awarding pre-judgment interest in the amount of **$9,143.57**; and (4) awarding a tax offset in the amount of **$5,440.76**.

Dated in Milwaukee, Wisconsin this 27th day of December, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge